**Marjorie JACKSON, Plaintiff,**

v.

**Jane A. KENNEY, Director of ACTION, Defendant.**

**No. 89–1203–CV–W–JWO–3.**

United States District Court, W.D. Missouri, W.D.

May 2, 1991.

Irving Achtenberg, Achtenberg & Achtenberg, P.C., Kansas City, Mo., for plaintiff.

Gay L. Tedder, U.S. Atty.'s Office, Kansas City, Mo., for defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION, VACATING ORDER OF DECEMBER 13, 1990, AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ELMO B. HUNTER, Senior District Judge.

This is a race and sex discrimination case. Plaintiff, a black female, claims that ACTION, a federal agency, discriminated against her when it selected a white male, less qualified than plaintiff, for the position of Massachusetts State Program Director. On December 13, 1990, the Court granted defendant's motion for summary judgment. That Order is now vacated and set aside.

Entry of summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party need only show "that there is an absence of evidence to support the nonmoving par-

ty's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Whether a "genuine issue" exists depends on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

### Factual Background

ACTION issued a vacancy announcement for the position of Massachusetts State Program Director[1] on August 3, 1984, inviting applications from "ACTION-wide status" candidates. "ACTION-wide" means employees who are on the ACTION payroll at the time a vacancy announcement is issued. "Status" means applicants who are eligible for transfer, reinstatement to a position higher than the last non-temporary grade held, and individuals with non-competitive eligibility. Plaintiff was not employed by ACTION at the time the vacancy announcement was issued. Because plaintiff's application did not reveal that she was no longer an ACTION employee (*see* Matthews' Affidavit at 1), she was inadvertently interviewed for the position. Daniel Bonner, the selecting official, did not interview the applicants, and did not know the plaintiff. The application form which Bonner reviewed did not indicate plaintiff's race, and Bonner did not know plaintiff's race.

Bonner selected William Cosby, whom he did not interview, for the position. Cosby had been employed by ACTION since 1974 and was appointed Acting Massachusetts Program Director in June, 1974. Cosby acted in that capacity when the former State Program Director went on vacation. Cosby was therefore qualified for the position and was more knowledgeable about the Massachusetts program than was plaintiff.

In the December 13 Order, the Court held that plaintiff had not established a

prima facie case of discrimination, that ACTION's hiring decision was based upon neutral factors, that ACTION had no discriminatory animus, that plaintiff's claim that ACTION acted in violation of its own affirmative action plan is meritless, and that the statistical data shows that ACTION's hiring practices have not had a disparate impact on black females. Upon reconsideration, the Court concludes that the December 13 Order should be vacated and the defendant's motion for summary judgment should be considered anew and in light of plaintiff's arguments in her motion for reconsideration.

### Plaintiff's Claim of Race-based Disparate Treatment

■ ACTION contends that plaintiff has failed to make a prima facie case of race discrimination because she has failed to demonstrate that she was qualified for the position. Specifically, ACTION contends that because only ACTION employees were eligible, plaintiff was ineligible for and thus unqualified for the position. Plaintiff argues that ACTION has confused the distinction between eligibility and qualification, and that she was qualified for the position, even though she was concededly ineligible due to ACTION's decision to limit eligibility to then-current ACTION employees. ACTION admits that "had the plaintiff been eligible for the position of State Program Director, she would have met the basic qualifications for that position." Defendant's Reply in Opposition to Motion for Reconsideration at 10.

Upon reconsideration, the Court agrees that there is an important difference between a person's eligibility for a position and her qualification for that position. Qualification for a position relates to a person's ability to carry out the functions of that position. "Eligibility," as ACTION has used the term here, relates to considerations which have nothing to do with an applicant's ability to perform the duties of the position; rather, "eligibility" in the

1. Plaintiff has disavowed any intention of seeking relief because of ACTION's failure to select her for the Missouri State Program Director position. Accordingly, there is no claim (based

on the alleged discrimination with respect to the Missouri position) on which summary judgment can be granted.

sense intended here relates to whether someone is permitted even to apply for the position, not whether she could fulfill its obligations. Because ACTION has conceded that plaintiff, but for her "ineligibility," was qualified for the position, the Court finds that plaintiff was qualified for the position.

■ Nevertheless, plaintiff has failed to make a prima facie case of race discrimination. The first element of the prima facie showing which a plaintiff claiming racial discrimination must establish is that she is a member of a racial minority. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Though this Court is aware of no reported case on point, common sense dictates that a plaintiff must also establish as part of her prima facie showing not simply that she is a member of a racial minority but, in addition, that the defendant knew her race. Under circumstances where it cannot reasonably be inferred that the defendant knew the plaintiff's race, then the plaintiff cannot prove—as a matter of simple logic—what she must ultimately prove: that the defendant discriminated against her on the basis of her race.

In the present case, Daniel Bonner, the ACTION employee who made the hiring decision, did not know the plaintiff nor did he interview her. The application form which Bonner reviewed did not indicate plaintiff's race. Because Bonner did not know plaintiff's race, he could not have intentionally discriminated against her on the basis of her race. Plaintiff has produced no evidence which establishes a genuine factual dispute as to Bonner's knowledge of her race. Summary judgment must therefore be entered against plaintiff on her claim of race-based disparate treatment.

### Plaintiff's Claim of Sex-based Disparate Treatment

■ Having shown that she was a qualified female [2] not selected for a position for which ACTION was seeking applicants,

and that a male was instead chosen, plaintiff has made a prima facie case of sex discrimination. Defendant, however, has articulated neutral reasons for its decision not to hire plaintiff and to promote Cosby to the position. Thus, "the factual inquiry proceeds to a new level of specificity." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). Once the defendant has met its burden of production by proffering some evidence of a neutral reason for the employment decision, the plaintiff must then prove that the stated reason is pretextual. Significantly, it is the plaintiff who at all times bears the burden of persuasion on the prima facie case and on the issue of pretext. *Id.* at 256, 101 S.Ct. at 1095.

■ The evidence which the plaintiff introduces to establish the prima facie case "may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual. Indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation." *Id.* at 255, n. 10, 101 S.Ct. at 1095, n. 10. In the present case, plaintiff has presented statistical proof—defendant's answers to interrogatories—which shows that the number of females in the ACTION workforce is lower than the percentage of females holding similar positions in the private sector. Between 1982 and 1986, females composed 39.6 percent of ACTION's GM–11 and GM–12 rated workforce, 23.1 percent of its GM–13, GM–14 and GM–15 rated workforce, and 34.8 percent of its entire workforce. By contrast, females composed 44.0 percent of the private sector workforce holding similar positions. This evidence does raise a genuine issue of whether ACTION's articulated reasons for not hiring plaintiff are pretextual. Summary judgment therefore cannot be granted on her claim of gender-based disparate treatment.

**2.** Plaintiff's name appeared on the application which Bonner reviewed, so it can reasonably be inferred that he knew her gender.

### Plaintiff's Claim of Disparate Impact

■ Plaintiff has also challenged ACTION's employment practices as having a disparate impact upon black women. To prove this claim, plaintiff must show that ACTION's application of race- and sex-neutral factors has resulted in a disparate impact on black females and, thus, presumably resulted in the adverse employment decision against her. In this case, however, even if the Court were to accept at face value plaintiff's statistical evidence, the complained of practice—the selection of State Program Directors from a particular pool of applicants—had no adverse impact on her because she was in the pool of applicants considered for the position.

Although plaintiff intimates that Bonner did not select her because she was not an ACTION employee at the time, she has presented no evidence from which it could reasonably be concluded that Bonner knew that she was not then an ACTION employee. Moreover, defendant has attached affidavits to its motion for summary judgment which show that plaintiff's application did not indicate that she was no longer employed by ACTION. To survive the motion for summary judgment on the disparate impact claim, plaintiff would have to show, at the very least, that there is some factual dispute as to whether Bonner knew she was no longer employed by ACTION; if plaintiff could at least demonstrate that Bonner knew she was no longer an ACTION employee, then it could perhaps be inferred that he did not hire her because she was no longer an ACTION employee. Plaintiff would still bear the burden of showing a genuine dispute as to whether ACTION's race- and sex-neutral practice of occasionally hiring from a pool composed solely of ACTION employees has a disparate impact on women, blacks or black women.

At any rate, plaintiff has presented absolutely no evidence that the decision not to hire *her* resulted from a practice which has historically precluded black women from the pool of applicants; even if the complained of practice has indeed precluded black women from the pool of applicants, plaintiff *was* included in the pool of applicants despite the fact that she is a black woman. Succintly stated, plaintiff has failed to produce any evidence that *she* was harmed by the allegedly discriminatory practice, and defendant's motion for summary judgment on plaintiff's disparate impact claim must therefore be granted.

Finally, plaintiff has claimed that ACTION failed to follow its affirmative action plan. Plaintiff, however, has disavowed any intention of making this the basis of her claims of race and gender discrimination. Whether or not plaintiff's evidence of ACTION's failure to follow an affirmative action plan is relevant and admissible evidence is not a question to be determined on a motion for summary judgment.

For all of the foregoing reasons, it is hereby

ORDERED that plaintiff's motion for reconsideration is GRANTED. It is further

ORDERED that the Court's Order of December 13, 1990, is VACATED. It is further

ORDERED that defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Judgment is entered against plaintiff on her claim of disparate impact based on her race and sex and on her claim of disparate treatment based on her race. The motion for summary judgment is denied with respect to plaintiff's claim of disparate treatment based on her sex.

IT IS SO ORDERED.